UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

MICHAEL DOUGLAS HATFIELD,

                      Plaintiff,

v.                                                   5:16-CV-0054
                                                  (GTS/WBC)
COMMISSIONER OF SOCIAL SECURITY,

                      Defendant.
_____

APPEARANCES:                                        OF COUNSEL:

MICHAEL DOUGLAS HATFIELD
 *Pro Se*
P.O. Box 172
Hannibal, NY 13074

U.S. SOCIAL SECURITY ADMIN.                 KATHRYN POLLACK, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II
 Counsel for Defendant
26 Federal Plaza – Room 3904
New York, NY 10278

William B. Mitchell Carter, U.S. Magistrate Judge,

## REPORT and RECOMMENDATION

      This matter was referred for report and recommendation by the Honorable Judge Suddaby, Chief United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(d). (Dkt. No. 26.) This case has proceeded in accordance with General Order 18.

      Currently before the Court, in this Social Security action filed by Michael Douglas Hatfield ("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the Commissioner") pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), is Defendant's motion

for judgment on the pleadings. (Dkt. No. 24.) For the reasons set forth below, Defendant's motion is granted.

## I. RELEVANT BACKGROUND

### A. Factual Background

Plaintiff was born in 1964. (T. 61.) He received his GED. (T. 43.) Generally, Plaintiff's alleged disability consists of mental impairments. (T. 147.) His alleged disability onset date is September 1, 2007. (T. 38-39.) His date last insured is September 30, 2007. (T. 66.) He previously worked as a cook and laborer. (T. 171.)

### B. Procedural History

On October 18, 2012, Plaintiff applied for a period of Disability Insurance Benefits ("SSD") under Title II, and Supplemental Security Income ("SSI") under Title XVI, of the Social Security Act. (T. 119.) Plaintiff's applications were initially denied, after which he timely requested a hearing before an Administrative Law Judge ("the ALJ"). On January 24, 2014, Plaintiff appeared before the ALJ, Paul Michael Stimson. (T. 30-60.) On June 13, 2014, ALJ Stimson issued a written decision finding Plaintiff not disabled under the Social Security Act. (T. 11-29.) On August 18, 2014, the Appeals Council ("AC") denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. (T. 1-4.) Plaintiff timely sought judicial review in the Western District of Tennessee and Plaintiff's complaint was transferred to this Court on January 15, 2016. (Dkt. Nos. 1, 12.)

### C. The ALJ's Decision

Generally, in his decision, the ALJ made the following five findings of fact and conclusions of law. (T. 16-25.) First, the ALJ found that Plaintiff met the insured status

2

requirements through September 30, 2007 and Plaintiff had not engaged in substantial gainful activity since September 1, 2007. (T. 16.) Second, the ALJ found that Plaintiff had the severe impairments of restless leg syndrome, dysthymia, anxiety, and a personality disorder. (*Id.*) Third, the ALJ found that Plaintiff did not have an impairment that meets or medically equals one of the listed impairments located in 20 C.F.R. Part 404, Subpart P, Appendix. 1. (T. 17-19.) Fourth, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels but was limited to unskilled work away from the general public. (T. 19.) Fifth, the ALJ determined that Plaintiff was incapable of performing his past relevant work; however, there were jobs that existed in significant numbers in the national economy Plaintiff could perform. (T. 23-25.)

## II. THE DEFENDANT'S BRIEFING

### A. Defendant's Arguments

Defendant makes one argument. Defendant argues the ALJ's determination was supported by substantial evidence because the ALJ properly determined Plaintiff's RFC and correctly concluded Plaintiff was not disabled. (Dkt. No. 24 at 4-12 [Def.'s Mem. of Law].)

Plaintiff did not file a brief pursuant to General Order 18. (*See generally* Dkt.)

## III. RELEVANT LEGAL STANDARD

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine de novo whether an individual is disabled. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the

Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence.  *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971).  Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.  *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]."  *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).  In other words, this Court must afford the Commissioner's determination considerable

deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

## B. Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. *See* 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a 'residual functional capacity' assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014).

## IV. ANALYSIS

### A. ALJ's RFC Determination

Plaintiff's RFC is the most he can still do despite his limitations. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). In making an RFC determination, the ALJ will base his determination on an assessment of all the relevant evidence in the case record. *See id.* Further, Plaintiff's RFC is his maximum remaining ability to do sustained work activities in an ordinary setting on a regular and continuing basis. *See id.* at §§ 404.1545(b)-(c), 416.945(b)-(c). "A regular and continuing basis means eight hours a day, for five days a

week, or an equivalent work schedule." *Pardee v. Astrue*, 631 F. Supp. 2d 200, 210 (N.D.N.Y. 2009).

The ALJ's RFC determination was supported by substantial evidence in the record. "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue,* 569 F.3d 108, 112 (2d Cir. 2009). The ALJ's RFC determination was supported by the objective medical evidence in the record, treatment notations, and Plaintiff's statements.

The ALJ determined that Plaintiff could perform work at all exertional levels. (T. 19.) As stated by Defendant, the record established that Plaintiff's physical impairments did not significantly limit his functioning. (Dkt. No. 24 at 5 [Def.'s Mem. of Law].) In his decision the ALJ thoroughly summarized the medical evidence in the record regarding Plaintiff's physical impairments. The record contained treatment for kidney stones, restless leg syndrome, low testosterone, and nocturnal hypoxia; however, as noted by the ALJ, the record did not establish significant work related limitations attributable to these conditions. (T. 16-17, 21-23.) Indeed, physical examinations of Plaintiff during the relevant time period were unremarkable. (T. 273-278, 280, 292, 550-551.) At the hearing, Plaintiff acknowledged that his medical problems were primarily mental and that he could still physically perform his past work as a cook. (T. 52-53, 172.) Therefore, substantial evidence in the record supported the ALJ's physical RFC determination. The ALJ properly relied on the objective medical evidence in the record which indicated Plaintiff had normal physical examinations, his physical impairments did

not cause work related limitations, and Plaintiff's testimony that he could still physically perform work.

The ALJ determined that Plaintiff was limited to unskilled work away from the general public. (T. 19.) The ALJ's mental RFC determination was supported by substantial evidence in the record. The ALJ relied on objective medical evidence, psychological evaluations, and Plaintiff's testimony in making his mental RFC determination. (T. 19-23.)

Robert Kennon, Ph.D. performed a psychological evaluation on December 5, 2013. (T. 338-350.) Dr. Kennon opined that Plaintiff had "moderate" limitations in his ability to: relate to coworkers; interact with supervisors; deal with work stresses; work in coordination or proximity to others without being distracted by them; complete a normal workday; and complete a normal workweek. (T. 347-348.)[1] Dr. Kennon opined that Plaintiff had "moderate" limitations in his ability to: behave in an emotionally stable manner; deal with the general public; accept instructions and respond appropriately to criticism from supervisors; get along with coworkers and peers without distracting them or exhibiting behavioral extremes; and maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness. (T. 349.) Dr. Kennon did not opine that Plaintiff had "marked" or "extreme" limitations in any areas of functioning. (T. 347-350.) The ALJ afforded Dr. Kennon's opinion "some weight." (T. 23.)

---

[1] Moderate is defined at "from six to twenty percent of work time, there is noticeable diminution in performance which may not by itself preclude the ability to work but would intermittently impair performance to less than the industry norm." (T. 347.) Marked is defined as "from twenty-one to thirty-five percent or more of work time, the individual cannot usefully perform or sustain the activity." (*Id.*) Extreme is defined as "there is a major, significant limitations in performance with no useful or sustained ability to function." (*Id.*)

The ALJ also relied on Plaintiff's mental status examination and mental health treatment notes in formulating his RFC. (T. 20-21.) As indicated by the ALJ, Plaintiff exhibited normal mental status examinations in March of 2013. (T. 20, *referring to* 274.) Although Plaintiff had a flat affect and depressed mood in May 2013, his thought content was appropriate, and his attention, concentration, judgment, and impulse control were intact. (T. 20, *referring to* 485-487.) The ALJ further relied on mental status examinations in June, July, August, October and November of 2013. (T. 20, *see generally* T. 295-336.) As further noted by the ALJ, the record showed Plaintiff's symptoms were generally well controlled with medication and counseling. (T. 203, 363, 367.) Plaintiff was also described as cooperative by providers. (T. 236, 341, 361, 368.) Therefore, the medical evidence in the record supported the ALJ's determination that Plaintiff could perform unskilled "away from the general public." (T. 19.)

The ALJ also properly considered Plaintiff's subjective complaints and related functional limitations, and found that Plaintiff's assertions were not entirely credible. (T. 19-23.) An ALJ "is not required to accept [a plaintiff's] subjective complaints without question; he may exercise discretion in weighing the credibility of the [plaintiff's] testimony in light of the other evidence in the record." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (citing *Marcus v. Califano,* 615 F.2d 23, 27 (2d Cir.1979)). Here, the ALJ weighed Plaintiff's testimony and subjective complaints in conjunction with the medical evidence. The ALJ concluded that Plaintiff's stability during the relevant period, improvement with medication and unremarkable mental status findings undermined his statements that his conditions were totally disabling. (T. 21-23.) Plaintiff's statements conflicted with the opinion of Dr. Kennon findings of only mild limitations in attention and

8

concentration, and at most moderate, but not marked or extreme, limitations in social functioning.

The ALJ also considered Plaintiff's activities of daily living which were inconsistent with his statements. (T. 21); *Poupore v. Astrue*, 566 F.3d 303, 307 (2d Cir. 2009) ("the ALJ correctly noted that Poupore was able to care for his one-year-old child, including changing diapers, that he sometimes vacuumed and washed dishes, that he occasionally drove, and that he watched television, read, and used the computer"). Plaintiff indicated that he worked as a cook, had a driver's license, maintained the household, shopped, took care of his girlfriend's children, traveled, and used a computer. (T. 42, 171, 221, 341, 382, 525.) Therefore, the ALJ properly assessed Plaintiff's credibility.

Overall, the ALJ's physical and mental RFC were supported by substantial evidence in the record. The ALJ's decision properly laid out the medical evidence in the record which he relied on in making his determination. It is apparent from the ALJ's decision, and a review of the record, that he relied on an evaluation of all the evidence including Dr. Kennon's opinion, Plaintiff's treatment records, testing, assessments, and Plaintiff's subjective complaints. The ALJ therefore reasonably concluded that Plaintiff remained capable of a range of unskilled work. It is therefore recommended that the ALJ's RFC determination be upheld.

### B. The ALJ's Step Five Determination

At step five in the sequential evaluation, the ALJ was required to perform a two part process to first assess Plaintiff's job qualifications by considering his physical ability, age, education, and work experience, and then determine whether jobs exist in

the national economy that Plaintiff could perform.  *See* 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. §§ 404.1520(f), 416.920(f); *Heckler v. Campbell,* 461 U.S. 458, 460, 103 S.Ct. 1952, 1954, 76 L.Ed.2d 66 (1983).  The second part of this process is generally satisfied by referring to the applicable rule of the Medical-Vocational Guidelines set forth at 20 C.F.R. Part 404, Subpart P, Appendix 2 (commonly called "the Grids" or the "Grid").  *See Bapp v. Bowen,* 802 F.2d 601, 604 (2d Cir.1986).

At step five the ALJ considered Plaintiff's age, education, work experience, and RFC and determined that jobs existed in significant numbers in the national economy that Plaintiff could perform.  (T. 23-24.)  The ALJ explicitly considered Plaintiff's non-exertional limitations and determined that they had little to no effect on the occupational base of unskilled work.  (T. 24.)  Therefore, it is recommended that the ALJ's step five determination be upheld.

After careful review of the administrative record on appeal, the Court recommends the Commissioner's determination be affirmed, for the reasons stated herein and further outlined in Defendant's memorandum of law.

**ACCORDINGLY**, based on the findings above, it is

**RECOMMENDED**, that the Commissioner's decision be AFFIRMED, and the Plaintiff's complaint DISMISSED.

Pursuant to 28 U.S.C. § 636 (b)(1) and Local Rule 72.1(c), the parties have **FOURTEEN (14) DAYS** within which to file written objections to the foregoing report.  Any objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.**  *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary of Health*

*and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636 (b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated: March 9, 2017

/s/ Bill Carter
William B. Mitchell Carter
U.S. Magistrate Judge